UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ELLA MAE WILLIAMS, | ) | Case No. 1:09 CV 0254 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Ella Mae Williams filed this appeal seeking judicial reversal under 42 U.S.C. §405(g) and §1383(c)(3) from the administrative denial of disability insurance benefits and supplemental security income. At issue is the ALJ's decision dated September 2, 2008, which stands as the final decision of the Commissioner. See 20 C.F.R. §404.1481 §416.981. The parties consented to the jurisdiction of the Magistrate Judge for all further proceedings including entry of judgment in accordance with 28 U.S.C. §636(c) and Rule 73 of the Federal Rules of Civil Procedure.

Williams alleges onset of disability on January 2, 2005. She attributes her disability to hypertension, gastroesophagael reflux disease (GERD), anemia, osteoarthritis and chronic obstructive pulmonary disease (COPD). Williams was 63 years of age at the time of alleged onset of disability and 67 years of age at the time of the administrative decision. Her vocational factors are limited. She has a 12th grade education has worked as a food service serving assistant for six years at Metropolitan Hospital (Tr. 589). However, this job was found to not constitute substantial

2

gainful activity, and consequently Williams is deemed to have had no past relevant work experience (Tr. 14-16).

She presents no medical opinion of disability. Her treatment has been primarily through the Free Clinic and local hospitals on an *ad hoc* basis. On October 8, 2005, Dr. Hochman examined Williams consultatively for the state agency (Tr. 313-19). The doctor noted her complaints of right hip pain, right knee pain and pain with walking long distances (Tr. 313). Muscle testing was normal, as well as, were all ranges of motion. Neurological examination was normal in both the upper and lower extremities, but on straight leg raising there was reportedly mid-line discomfort in the lumbar area without spasm. Right hip tenderness also was noted and there was discomfort at the extremes of the ranges of motion. Dr. Hochman found the complaints of osteoarthritis to be questionable, but he did conclude that Williams would only have "difficulty with walking long distances and with carrying lifting heavier objects" (Tr. 315).

In contrast, Williams had testified at her administrative hearing that she has had arthritis for 10 years and can hardly get around (Tr. 589). There were no other witnesses (Tr. 583-599). After reviewing the records and evidence from the hearing, the ALJ determined that "there is nothing in the record to indicate that [Williams] could not perform medium exertional work" (Tr. 16).  Based on the medical-vocational guidelines of Appendix 2, the ALJ determined that Williams was not disabled.(Tr. 16).

Williams challenges these conclusions arguing that substantial evidence does not support the ALJ's finding of full range of medium work capability, that COPD limits her ability to perform medium work, that the ALJ had a duty to obtain a consultative examination when the last residual functional capacity examination was performed in October 2005, that the ALJ's finding that the medical vocation guidelines can be applied to deny benefits is contrary to law and not based on substantial evidence, and  that the ALJ failed to fully develop the record.

*Standard of Review:*

The issues before this court must be resolved under the standard whether there is substantial evidence in the record to support the Commissioner's decision.  Substantial evidence is evidence that a reasonable mind would accept as adequate to support the challenged conclusion.  *Casey v. Secretary of Health & Human Services*,  987 F.2d 1230, 1233 (6th Cir. 1993);  *Wyatt v. Secretary*, 974 F.2d 680, 683 (6th Cir. 1992); *Born v. Secretary*, 923 F.2d 1168, 1173 (6th Cir. 1990); and see *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court may "not inquire whether the record could support a decision the other way").

*Sequential Evaluation and Meeting or Equaling the Listing of Impairments:*

The Commissioner follows a 5-step review process known as the sequential evaluation. This evaluation begins with the question whether the claimant is engaged in substantial gainful activity and then at the second step whether there is a medically severe impairment.  See §404.1520(a)(4)(i) and (ii) and §416.920(a)(4)(i) & (ii). At the third step of a disability evaluation sequence the issue is whether the claimant has an impairment which meets or equals a listed

4

impairment from the Listing of Impairments of Appendix 1. See 20 C.F.R. §404.1520(a)(iii) and (d); §416.920(a)(iii) and (d). If an impairment exists which meets the description from the listing or is its equivalent, the claimant is deemed disabled at that point without consideration of age, education or prior work experience. See *Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987); *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (Once a claimant has met this burden that ". . . his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without determination whether he can perform his prior work or other work.")."At the fourth step of the sequential approach described in 20 C.F.R. §404.1520, it is the claimant's burden to show that [he] is unable to perform her previous type of work." *Dykes ex rel. Brymer v. Barnhart*, 112 Fed. Appx. 463, 467, 2004 WL 2297874, at *3 (6th Cir. 2004)); *Studaway v. Sect'y of Health and Human Services*, 815 F.2d 1074, 1076 (6th Cir. 1987). Once the administrative decision-maker determines that an individual cannot perform past relevant work, then the burden of going forward shifts to the Commissioner at the fifth step to demonstrate the existence of types of employment compatible with the individual's disability. *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Cole v. Secretary*, 820 F.2d 768, 771 (6th Cir. 1987); *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

*Analysis:*

Because Williams has no past relevant work, Williams has succeeded in shifting the burden onto the Commissioner to demonstrate the existence of other types of employment within her capabilities. See *Maher v. Sect'y of Health & Human Serv.*, 898 F.2d 1106, 1110, 29 Soc. Sec. Rep.

5

Serv. 159 (6th Cir. 1989). According to Williams' testimony her past work was essentially light work with carrying 10 pounds (Tr. 589). However, she denies that she retains work capability to this extent. Dr. Hochman did not complete a residual functional capacity for Williams. However, "[t]he regulations do not require that a consultative physician provide a residual functional capacity assessment. A consultative report must only give sufficient information so that the Commissioner can determine the claimant's impairments and ability to work." *Hancock v. Comm'r of Soc. Sec.*, 181 F.3d 101, 1999 WL 282684, at *1 (Table Apr. 28, 1999).

This case revolves around 20 C.F.R. §404.1545(a) and its SSI counterpart §416.945(a), which provide in pertinent part:

> (3) Evidence we use to assess your residual functional capacity. We will assess your residual functional capacity based on all of the relevant medical and other evidence. **In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity. (See § 404.1512(c).)** However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, **including arranging for a consultative examination(s) if necessary,** and making every reasonable effort to help you get medical reports from your own medical sources. (See §§ 404.1512(d) through (f).) We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations. (See § 404.1513.) We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons. (See paragraph (e) of this section and § 404.1529.)
>
> (4) What we will consider in assessing residual functional capacity. When we assess your residual functional capacity, we will consider your ability to meet the physical, mental, sensory, and other requirements of work, as described in paragraphs (b), (c), and (d) of this section.
>
> (5) How we will use our residual functional capacity assessment.

6

(I) **We will first use our residual functional capacity assessment at step four of the sequential evaluation process to decide if you can do your past relevant work.** (See §§ 404.1520(f) and 404.1560(b).)

(ii) **If we find that you cannot do your past relevant work (or you do not have any past relevant work), we will use the same assessment of your residual functional capacity at step five of the sequential evaluation process to decide if you can make an adjustment to any other work that exists in the national economy.** (See §§ 404.1520(g) and 404.1566.) At this step, we will not use our assessment of your residual functional capacity alone to decide if you are disabled. We will use the guidelines in §§ 404.1560 through 404.1569a, and consider our residual functional capacity assessment together with the information about your vocational background to make our disability determination or decision. For our rules on residual functional capacity assessment in deciding whether your disability continues or ends, see § 404.1594.(emphasis supplied).

20 C.F.R. § 404.1545(a); §416.945(a).

The forgoing regulation set out three key points. First, the burden of establishing residual functional capacity is upon the claimant at the fourth step of the sequential evaluation process. Second, it is this residual functional capacity which carries through to step five to determine whether claimant is capable of other types of work. Third, the ALJ does have discretion to order a consultative examination. In this matter the consultative examination by Dr. Hochman was obtained administratively at the pre-hearing stage of review.

Williams counters that the ALJ failed to weigh the medical opinions in the record as required by 20 C.F. R. §404.1527(d), and failed to explain his rejection of Dr. Hochman's partial residual functional capacity. Williams is correct that the ALJ made no mention of Dr. Hochman. However, ALJ's are required to give "good reason" only for treating sources, and Dr. Hochman was not a treating source. See *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007). Moreover,

7

medium work which is described in the regulations as work "involv[ing] lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §404.1567(c);§416.967(c). This requirement is in addition to light work requirements. *Id.* Light work requires lifting 20 pounds and "a good deal of walking or standing, or when it involves sitting most of the time . . . pushing and pulling of arm or leg controls." See 20 C.F.R. §404.1567(b);§416.967(b). Dr. Hochman's statements that Williams is restricted from walking "long" distances and lifting "heavier" objects can reasonably be interpreted as consistent with medium work. The ALJ did have substantial evidence on which to find that Williams could perform medium exertion based on Dr. Hochman's findings of near normalcy.

Next, Williams argues that the record does not contain medical evidence that she can perform medium work. It does ,though, in a negative sense because objective testing did not confirm a physical basis for William's allegations. Under this contention Williams maintains that her severe COPD significantly limits her ability to perform medium work. Williams refers to Dr. Whelan, who diagnosed chronic bronchitis, but concedes that this treating physician provided no opinion (Tr. 321). Dr. Hochman, on the other hand, had noted what he termed "questionable bronchitis" in response to William's complaint of wheezing with bronchitis (Tr. 315). His examination was negative for coughing, wheezing or shortness of breath (Tr. 314). Accordingly the ALJ did have substantial evidence for imposing no additional limitations on Williams' residual functional capacity.

8

Finally, Williams is dissatisfied with the ALJ's failure to order *additional* consultative examinations. This issue has a regulatory underpinning in 20 C.F.R. § 404.1545(a) and §416.945(a), as quoted earlier and more specifically in 20 C.F.R. §404.1512(f); §404.1517 and §404.1519a plus their SSI counterparts §§416.912(f); 416.917 and 416.919a . In the Sixth Circuit this claim requires a showing of abuse of discretion. See *Foster v. Halter,* 279 F.3d 348, 355 (6th Cir.2001)(citing 20 C.F.R. §404.1517 "Consultative examination at our expense."). "[T]he regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." *Foster*, 279 F.3d at 355(quoting *Landsaw v. Sec'y of Health & Human Servs*., 803 F.2d 211, 214 (6th Cir.1986)). The ALJ's discretion is guided by §404.1519a and its counterpart §416.919a which read:

> (b) Situations requiring a consultative examination. A consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim. Other situations, including but not limited to the situations listed below, will normally require a consultative examination:
>
>> (1) The additional evidence needed is not contained in the records of your medical sources;
>>
>> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source;
>>
>> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;
>>
>> (4) A conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved, and we are unable to do so by recontacting your medical source; or
>>
>> (5) There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established.

20 C.F.R. § 404.1519a(b); §416.919a(b).

9

Keeping in mind that one consultative examination had been ordered from Dr. Hochman with devastating consequences to Williams' alleged disability, Williams has not shown an abuse of discretion. Instead he argues that Dr. Hochman's October 2005 report is in need of updating, and a residual functional capacity assessment based on alleged breathing problems, since the treating physician, Dr. Whelan, had not completed one. Dr. Whelan noted history of chronic bronchitis and history of allergic rhinitis in April 2008 (Tr. 321).Dr. Hochman had however addressed Williams' alleged breathing problem to find "questionable bronchitis" based on negative findings (Tr. 315). The ALJ found that Williams did indeed have COPD, but this was treated by medication and that the few flare-ups of chronic bronchitis had been resolved with treatment (Tr. 16).

Williams does not challenge these findings from the record. Nor does she demonstrate why additional evidence is needed to for fact-finding on this claim, or that Dr. Whelan has passed away or has not provided an opinion of disability merely due to obstinacy and lack of cooperation on Dr. Whelan's part.  Further, Williams has not alleged a need for technical or specialized medical evidence, alleged ambiguity of the evidence, nor demonstrated progressive worsening of the COPD. Before the court can consider whether the ALJ abused his discretion by not ordering an additional consultative examination, it is incumbent on Williams to demonstrate that his conclusion is not supported by the record. Williams fails to show any evidence that would cause Dr. Hochman to change his findings if presented to him now.  This critical showing has not been made. Consequently, Williams has not shown error in the Commissioner's determination to deny disability and supplemental security income or that the denials were not supported by substantial evidence.

10

## *CONCLUSION*

The issues before this court must be resolved under the standard of whether the determination is supported by substantial evidence of record.  "Under 42 U.S.C. §405(g), the ALJ's findings are conclusive as long as they are supported by substantial evidence."  *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 851 (6th Cir. 1986) (stating that this court's review "is limited to determining whether there is substantial evidence in the record to support the findings")."  *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).   Based on the arguments presented, the record in this matter and the applicable law, the undersigned finds that the Commissioner's determination denying disability insurance benefits and supplemental security income was  supported by substantial evidence and must be affirmed.



      s/James S. Gallas
United States Magistrate Judge